2384

Felicia B. BARR, Respondent v. The BOARD OF TRUSTEES OF CLARENDON COUNTY SCHOOL DISTRICT NO. 2, Appellant.

(462 S.E. (2d) 316)

Court of Appeals

*Kenneth L. Childs* and *David E. Dubberly*, both of *Childs & Duff*, Columbia; *William H. Johnson*, of *Coffey, Cooper, Chandler & Durant*, Manning, *for appellant.*

*Jay Bender*, of *Baker, Barwick, Ravenel & Bender*, Columbia, *for respondent.*

Heard June 7, 1995.

Decided Aug. 7, 1995; Reh. Den. Sept. 21, 1995.

*Per Curiam:*

Dr. Felicia C. Barr (Barr) sought judicial review of a decision of the Clarendon County School Board (the Board) terminating her employment with the Clarendon County School District (the District). The circuit court reversed the decision of the Board. The Board appeals. We reverse.

### Facts

In April of 1993, Barr entered into a contract of employment with the Board which named her assistant superintendent of instruction for the 1993-94 school year. Barr had been employed by the Board in this capacity for the previous five years. On August 23, 1993, Dr. Sylvia H. Weinberg, the District Superintendent, notified Barr in writing she was being laterally transferred to the position of principal of Manning Primary School, effective September 20, 1993. Manning Primary School is the District's largest primary school with a student enrollment of over 900. In her letter notifying Barr of the transfer, Weinberg expressly stated Barr's salary for the 1993-94 school year would not be affected by the transfer. The letter further stated:

> This assignment promotes the best interests of the instructional program in this district, places you in a posi-

tion I believe you are best qualified to serve, and complements your professional development.

On or about August 23, 1993, Barr filed a sexual harassment complaint against a fellow administrator. The complaint was not resolved by the superintendent to her satisfaction. Thereafter, Barr filed a grievance under the District's Grievance Procedures. In her grievance complaint, Barr complained of: (1) dissatisfaction with the resolution of the harassment complaint; (2) poor communications and a hostile work environment in the district office; and (3) the job transfer to principal which she termed a demotion.

On September 7, 1993, Weinberg informed Barr in writing she was accelerating the effective date of the transfer to the next day, September 8, 1993. Weinberg also advised Barr that the transfer was "being made in lieu of recommending your termination" and any future disruptive behavior would be considered grounds for dismissal. On the same day, at the request of Weinberg and after Weinberg refused to excuse her, Barr attended a Manning Primary School faculty meeting but refused Weinberg's request that she address the faculty. Also on the same day, Barr's attorney notified Weinberg that Barr refused to accept the transfer because such a tranfer was allegedly in breach of her contract with the District. After Barr did not report to Manning Primary School on September 8, 1993, Weinberg wrote to her requesting immediate notification of her intentions regarding the position as principal. Nevertheless, Barr failed to report to Manning Primary School and assume her new duties as principal. She wrote to Weinberg on September 10, 1993 stating that she had been advised by counsel not to report for duty as principal, and that all future correspondence should be to her attorney. On September 14, 1993, Weinberg wrote to Barr informing her that her employment with the District had been suspended because of Barr's refusal to accept her new duties or even to report to work, and advising her that she would recommend Barr's termination by the Board.

Thereafter, Barr requested and was granted a full evidentiary hearing before the Board pursuant to the Teachers Employment and Dismissal Act. S.C. Code Ann. § 59-25-410 *et seq.* (1990). In its order dated February 25, 1994, the Board unanimously concluded, among other things, (1) Barr's con-

tract with the District did not preclude an involuntary transfer by the superintendent; (2) the involuntary transfer was justified; and (3) Barr's actions in failing to report to Manning Primary School and in failing to notify the proper authorities of her intent to remain absent constituted a material disruption of the educational process justifying the Board's acceptance of Weinberg's recommendation that her employment with the district be terminated. Barr appealed to the circuit court for judicial review of the Board's decision. The trial court reversed the Board's decision and ordered Barr's reinstatement. This appeal ensued.

## Discussion

On appeal, the Board argues the trial court erred in finding no substantial evidence to support the Board's ultimate decision to terminate Barr. We agree.

## I. Breach of Contract

S.C. Code Ann. § 59-19-90(2)(1990) vests in school district boards of trustees authority to "[e]mploy teachers . . . and discharge them when good and sufficient reasons for doing so present themselves, subject to the supervision of the county board of education." In line with this broad legislative grant of authority to school boards, the authority of the judiciary to review district board decisions in matters brought pursuant to the Teachers Employment and Dismissal Act is limited to determining whether the decision to terminate employment is supported by substantial evidence. *Kizer v. Dorchester County Vocational Educ. Bd. of Trustees*, 287 S.C. 545, 340 S.E. (2d) 144 (1986). Substantial evidence is that which, viewing the record as a whole, would allow reasonable minds to reach the conclusion the board reached or must have reached in order to justify its actions. *Id.* 340 S.E. (2d) at 146. The reviewing court cannot substitute its own judgment for that of the school board. *Id.* This court, of course, may correct errors of law. *Lexington County School District One v. Bost*, 282 S.C. 32, 316 S.E. (2d) 677 (1984).

In the instant case, the trial court found the Board committed an error of law in determining Barr's contract allowed her to be involuntarily transferred to another position within the district. Based on this finding, the trial court concluded that

inasmuch as the District breached its contract with Barr, she had no obligation to continue performing under the contract and, therefore, the Board's ultimate decision to terminate her employment for failure to report to Manning Primary was without evidentiary support. We hold this was error.

Barr sought and was granted a hearing before the Board pursuant to S.C. Code Ann. § 59-25-470 (1990) which affords teachers the right to a hearing before the school board upon written request following suspension or dismissal. Although Barr's position was titled Assistant Superintendent of Instruction, she is statutorily defined as a "teacher" for purposes of the Teachers Employment and Dismissal Act and is thus protected by the Act. *See* S.C. Code Ann. § 59-1-130 (1990) ("Teacher" means "any person who is employed . . . either to teach or to supervise teaching"); *see also Johnson v. Spartanburg County School Dist. No. 7*, 314 S.C. 340, 444 S.E. (2d) 501 (1994).

Barr's claim of wrongful termination, as well as the trial court's reversal of the Board's decision to terminate her, are based on the premise that her 1993-94 contract with the Board guaranteed her the position of Assistant Superintendent of Instruction for the entire school year. Therefore, the Board breached its contract with Barr by requiring her to take another position in the District.[1] Barr's contact with the Board is in the form approved by the State Board of Education on December 8, 1972. The contract incorporates pertinent "laws of South Carolina and [the] administrative rules and regulations" of the school district.[2] Moreover, Barr's complaint regarding her transfer and subsequent dis-

---

[1] The trial court's order states:

Barr does not rely on the Act to claim a property right in her position as assistant superintendent, and unlike the principals in *Snipes*, has not claimed a tenure right in the position beyond the expiration of the contract. Barr's entitlement to the position of assistant superintendent arises out of her contract with the School District and her involuntary transfer was a breach of that contract.

[2] District Regulations/Policy, CGL/CGM, adopted April 22, 1987 and entitled "ADMINISTRATIVE DISMISSALS, COMPULSORY TRANSFERS AND/OR REASSIGNMENTS" states:

The dismissal or nonrenewal of district administrators working pursuant to one-year or annual contracts must be carried out in accordance with the South Carolina Employment and Dismissal or Teachers Act. S.C. Code Section 59-25-410 *et seq.* (1990), and any other applicable state law

missal commenced as grievance proceedings under the District's Grievance Procedures. The hearing before the Board and the appeal to the circuit court were both pursued under S.C. Code Ann. § 59-25-410 *et seq.* (1990). The breach of contract issue was interjected by Barr into the proceedings as a means of justifying her actions and/or showing a lack of justification for the action of the superintendent. This matter did not reach the circuit court as a breach of contract action, and to the extent the court treated it as such, that was in error. There is no merit to her position that she is entitled to have her job as assistant superintendant reinstated based solely on the contract.[3]

## II. *Violation of the Teachers Tenure Act*

Specifically, Barr argues the involuntary transfer amounted to a constructive discharge. We reject this argument in light of the clear language of provisions of S.C. Code Ann. §§ 59-25-420, -430, -460 (1990) and relevant case law. In *Snipes v. McAndrew,* 280 S.C. 320, 313 S.E. (2d) 294 (1984), a case concerning the reassignment of two principals to assistant principal positions, the court expressly held that "teachers" who have been transferred, reassigned, or demoted are not entitled to an adversarial hearing because entitlement to such a hearing is dependent upon dismissal or nonrenewal. *Id.* 313 S.E. (2d) at 296. The court further expressly held that a transfer, reassignment, or demotion is not equivalent to dismissal or nonrenewal of a teacher's contract. *Id.* The court declined, absent legislative action evidencing contrary intent, to require adversarial hearings under such circumstances. *Id.*

---

or statute. Compulsory transfers and/or reassignment of administrative personnel are subject to the district's grievance procedure set forth in board policy GAE and the Administration regulation, GAE-R, Staff complaints and grievances.

Administrative transfers involving a loss of rank and/or income shall be reviewed by the board in a grievance hearing upon the request of the affected administrator.

[3] The Board has a duty to the public to remove teachers when "necessary to protect the well-being of the children of the district or is necessary to remove substantial and material disruptive influences in the educational process." S.C. Code Ann. § 59-25-450 (1990). A school board "simply does not have the authority to enter into an agreement [with a teacher] which interferes with their duty to the public." *Kizer,* 287 S.C. 545, 340 S.E. (2d) 144.

Furthermore, having reviewed the provisions of Barr's contract with the District, we find no provision expressly guaranteeing her a particular position for the duration of the school year. In fact, under our analysis, the holding in *Snipes* precludes judicial review of school board policy decisions governing interdistrict employee placement absent an actionable claim of nonrenewal or dismissal. *Id.* 313 S.E. (2d) at 297 (the Act makes no distinction between administrative or supervisory personnel and teachers; it creates a property interest in continued employment as a principal); *see also Bost*, 282 S.C. at 36, 316 S.E. (2d) 679.

Barr argues the recent case of *Johnson v. Spartanburg County Sch. Dist. No. 7*, 314 S.C. 340, 444 S.E. (2d) 501 (1994) provides for protection under the Act for demotions. Assuming for the purpose of this opinion Barr has suffered a demotion,[4] we hold she is not entitled to reinstatement pursuant to *Johnson.* In *Johnson* the Supreme Court, after distinguishing *Snipes*, found the reassignment of an assistant principal to a teaching position and the resulting reduction in his salary, which were effectuated without regard to the procedures set forth in the act, would be remedied by reinstatement of the assistant principal to his former position. *Id.* 444 S.E. (2d) at 503. The court stated "[t]here can be no doubt that to allow the School District to ignore procedures and then work a financial hardship on Johnson is an injustice requiring Johnson's reemployment." *Id.* The court further stated, reinstatement was "especially appropriate where the School District completely disregarded procedural legislation to remove, demote, or otherwise deprive an educator of his *salary or position.*" (Emphasis added.) *Id.* Although the court never uses the language "constructive dismissal," in view of the several cases which expressly or implicitly hold the Act applies only to dismissals and nonrenewals, the court necessarily must have viewed *Johnson* as a constructive dismissal case. We do not read *Johnson* to overrule *Snipes'* clear holding that the Act does not afford protection for mere reassignments or de-

---

[4] The District contends Barr has not been demoted. They argue Barr was transferred to the principalship of the largest elementary school in the District, she has suffered no reduction in pay, her new position on the District's organization chart is equivalent to the assistant superintendent position and she would answer directly to the superintendent.

motions so as to now afford a property interest to a teacher in a "position" *Johnson* would afford relief to a teacher where there is a deprivation of a "position" accompanied by a procedural violation of the Act or the District's own regulations and a loss of salary.[5] Here, Barr's procedural rights under the Act and District Regulations were not violated, nor was her salary decreased.

In light of the foregoing authorities, we hold the District did in fact have authority to reassign Barr without her consent and the trial court erred in finding to the contrary.

### III. *Substantial Evidence*

Having held the trial court erred in finding the transfer or reassignment of duties constituted a breach of the District's contract with Barr, we find the record provides substantial evidence to support the Board's decision to terminate. Because the Board did not breach its contract with Barr by transfering her[6] to another "teacher" position within the school district, Barr was obligated to report to Manning Primary School after she was officially notified of her transfer. As such, her actions following notification of the transfer, and the Board's subsequent decision to terminate her employment, must be considered by us in light of the powers of the Board, our limited scope of review and Barr's contract of employment. Her failure to report to Manning Primary School, especially taking into account the manner in which she refused to assume her new duties, constitutes "persistent neglect of duty" or failure to supervise instruction in

---

[5] In *Johnson*, the Supreme Court noted Mr. Johnson had received no counseling and therefore no opportunity to improve his performance prior to the reassignment. As noted in *Adams v. Clarendon Cty. School District*, 270 S.C. 266, 241 S.E. (2d) 897 (1978), the requirement for counseling and affording a teacher the opportunity to improve before dismissal apply to § 59-25-440 dismissals, and not to § 59-25-430 dismissal as in the case with Barr.

[6] Barr points out in her brief that because there "is no reasonable probability the [sic] Barr's transfer was a result of poor performance as assistant superintendent of instruction," the district lacked justification for transferring her. From the Board's perspective, it points out evidence showing Barr failed in her performance as assistant superintendent, and that she was better suited to the position of principal. Because the board is the finder of facts and the judge of credibility, we cannot say there is no probability the facts could not have been as it found them.

accordance with the directions of the superintendent.[7] This behavior, specifically mentioned in the Act as grounds for teacher dismissal, constitutes substantial evidence to support the Board's decision to terminate Barr's employment.

For the foregoing reasons, the decision of the trial court is reversed and the decision of the Board reinstated.

Reversed.

SHAW, CURETON and CONNOR, JJ., concur.

---

[7] S.C. Code Ann. § 59-25-430 provides, in part, that "[a]ny teacher may be dismissed at any time who shall fail, or who may be incompetent, to give instruction in accordance with the directions of the superintendent, or who shall otherwise manifest evident unfitness for teaching." An evident unfitness for teaching "is manifested by conduct such as . . . persistent neglect of duty. . . ."