THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
James Floyd, Appellant,
v.
State Budget and Control Board, Respondent.
 
 
 

Appeal from Richland County
 Larry R. Patterson, Circuit Court Judge

Unpublished Opinion No. 2006-UP-405
Submitted November 11, 2006  Filed December 11, 2006

AFFIRMED

 
 
 
Gloria Y. Leevy, of Columbia, for Appellant.
Edwin E. Evans, of Columbia, for Respondent.
 
 
 

PER CURIAM:  James Floyd appeals the affirmance of his termination from employment with the South Carolina Budget and Control Board (the Board).  We affirm.[1]
FACTS
In 2002, Frank Fusco, Executive Director of the Board, received an anonymous letter alleging, among other things, that several of the women working in the custodial area of the Boards Division of General Services (General Services), were being sexually harassed.  During the investigation that followed, several employees made allegations that Floyd sexually harassed and intimidated some custodial workers.  Jane,[2] one of Floyds subordinates, claimed she had a sexual encounter with Floyd at his apartment during her lunch break because he pressured her to have sex in order to preserve her job.  Jane described Floyd as living in Rutledge Apartments, Apartment 3, a one-bedroom apartment with a colonial style high bed with a dark-colored floral bedspread, a dresser with a picture of his mother on it, two night stands, and a chest of drawers with a picture of Floyds daughter on it.  Jill, a custodian under Floyds supervision, claimed Floyd made advances toward her and at one point grabbed and manhandled her.  Jill told Wanda Elm, a DSS employee in the building Jill cleaned, about the harassment, and Jill often hid from Floyd behind Elms desk.   
Floyd denied that he sexually harassed anyone and claimed that he was the actual victim of sexual harassment at the hands of Jane, Jill, and Cynthia, another employee under his supervision.  Floyd was suspended during the investigation.  After conducting interviews with numerous workers, including Floyd, Jane, and Jill, General Services determined Floyd had engaged in a pattern of sexually harassing employees under [his] supervision.  Floyd was terminated.   
Floyd, represented by counsel, appealed his termination to the Boards Grievance Panel (Internal Panel).  After a hearing, the Internal Panel recommended that the termination of Floyd be upheld.  Fusco, Director of the Board, reviewed the Internal Panels recommendation and upheld Floyds termination.  Floyd appealed to the State Employee Grievance Committee (State Committee), and a de novo hearing was held.  After hearing testimony from thirteen witnesses, including Floyd, the State Committee unanimously upheld Floyds termination, finding the testimony of Jane and Jill to be more credible than that of Floyd.  The State Committee further stated:  The Committee finds [Floyd] failed to establish that the Agencys decisions were inappropriate under the requirements of § 8-17-340(E)(2).  Therefore, the Committee upholds the decision of the [Board] to terminate [Floyd] and denies the relief sought.   
Floyd appealed his termination to the circuit court, alleging the State Committees decision was based solely on the testimony given by Jane and Jill.  Floyd further argued that all the facts and evidence presented on [his] behalf were not given [fair] and proper consideration.  After a hearing, the circuit court determined there was sufficient evidence to support the State Committees findings and affirmed the final decision of the State Committee.  This appeal followed.
STANDARD OF REVIEW
In reviewing a final decision of an administrative agency pursuant to South Carolina Code section 1-23-380(A)(6) (2005), the circuit court sits in an appellate capacity and is limited to considering whether the agency committed any errors.  Kiawah Resort Assoc. v. South Carolina Tax Commn, 318 S.C. 502, 505, 458 S.E.2d 542, 544 (1995).  The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.  S.C. Code Ann. § 1-23-380(A)(6) (2005).  The court can reverse or modify the administrative agencys decision if the substantive rights of the appellant have been prejudiced because the agencys decision was:

 
 
 (a) 
 in violation of constitutional or statutory provisions;
 
 
 (b)
 in excess of the statutory authority of the agency;
 
 
 (c)
 made upon unlawful procedure;
 
 
 (d)
 affected by other error of law;
 
 
 (e) 
 clearly erroneous in view of the reliable, probative and substantive evidence on the whole record; or
 
 
 (f) 
 arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
 
 

S.C. Code Ann. § 1-23-380(A)(6) (2005).  The findings of an administrative agency are presumed correct and will only be set aside if not supported by substantial evidence.  Rodney v. Michelin Tire Corp., 320 S.C. 515, 519, 466 S.E.2d 357, 359 (1996).  The burden is on the appellant to prove that the administrative agencys decision is unsupported by the evidence.  Tennis v. South Carolina Dept of Soc. Servs., 355 S.C. 551, 558, 585 S.E.2d 312, 316 (Ct. App. 2003).  
LAW/ANALYSIS
I.  Substantial Evidence
Floyd argues the circuit court erred in failing to reverse the State Committees affirmance of his termination by the Board because it was clearly erroneous in view of the reliable, probative, and substantial evidence on the record as a whole.  We disagree.
Substantial evidence is not a mere scintilla of evidence nor evidence viewed blindly from one side, but is evidence which, when considering the whole record, would allow reasonable minds to reach the conclusion that the administrative agency reached.  Tennis, 355 S.C. at 558, 585 S.E.2d at 316.  The possibility of reaching two inconsistent conclusions from the evidence does not mean the administrative agencys findings are not supported by substantial evidence.  Id.  
Floyd complains that the Board and the State Committee failed to adequately consider:  (1) his testimony that he did not sexually harass Jane or Jill; (2) his exemplary twenty-year employment history with the Board; and (3) the fact that Jane could not accurately describe Floyds apartment number or the furniture in his apartment, despite her allegations that she went to Floyds apartment for a sexual encounter.  Although Floyd states he is not asking this court to weigh the credibility of the witnesses, he is essentially arguing that his testimony was more credible than the other witnesses.  Because the weight of the evidence, including the credibility of witnesses, is a determination left solely in the administrative agency, neither the circuit court nor this court can make credibility determinations.  S.C. Code Ann. § 1-23-380(A)(6) (2005) (noting that the circuit court cannot substitute its judgment for that of the appellate agency as to the weight of the evidence on questions of fact).   
Looking at the evidence before the Board and the State Committee, we find there was substantial evidence to affirm Floyds termination.  Although Floyd claimed Jane and Jill were motivated to fabricate the sexual harassment allegations, the State Committee found their testimony more credible than Floyds.  Further, Wanda Elms testimony corroborated Jills allegations that Floyd appeared in her building several times to harass her.  Because there was substantial evidence to support the State Committees findings, the circuit court did not err in affirming Floyds termination.
II.  Disciplinary Procedures
Floyd argues the Board failed to follow its own disciplinary policy by failing to explore options other than termination.  Because of this failure, Floyd argues, the circuit court should have reversed the findings of the Board and the State Committee.  Floyd also argues that the Boards failure to discipline Cynthia after Floyd complained that she sexually harassed him shows disparity in the implementation of the Boards policy, requiring reversal.  We disagree.[3]  
The Boards disciplinary policy provides that founded cases of harassment constitute misconduct subject to appropriate disciplinary action up to and including dismissal in accordance with the progressive discipline policy.  Disciplinary actions range from counseling, an oral reprimand, a written reprimand, suspension, termination, reassignment, and demotion.  The disciplinary policy further provides that [w]hen an offense is of sufficient severity, disciplinary action may begin at a more advanced stage, including termination.  The following language precedes the section outlining particular punishments for particular offenses: 

The disciplinary actions noted for the personal conduct offenses listed at the end of this section are guidelines and the agency is not bound to them.  These guidelines are intended to provide guidance, but the circumstances of the particular situations may warrant disciplinary action outside these Guidelines.  Discipline may begin at any step in the procedure depending on the seriousness of the individual offense.

The section further suggests a written reprimand to a suspension for a first occurrence of harassment, suspension to termination for a second occurrence, and termination for a third occurrence.    
Reviewing the Boards policy, it is clear the Board had a range of disciplinary options in disciplining Floyd.  Although the disciplinary policy suggested a written reprimand to a suspension for a first occurrence of harassment, termination for a serious offense was also one of the options available to the Board.  The allegations against Floyd, which the Board and the State Committee found to be credible, included threats of demotion or firing if sexual favors were not given, grabbing an employee, and pressuring an employee to have sex with him.  These allegations were very serious.  Thus, we find the Board did not violate its progressive discipline policy by terminating Floyd for a first occurrence.  
CONCLUSION
There was substantial evidence to support the Boards and the State Committees decision to terminate Floyd for sexual harassment.  Further, there is no evidence to support Floyds argument that the Board failed to follow its progressive disciplinary procedures.  Accordingly, the decision of the circuit court to uphold Floyds termination is
 AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  We have changed the names of Floyds accusers to protect their identities.  
[3] We note this issue may not be preserved for appellate review.  Floyd did not complain that the Board failed to follow its progressive disciplinary procedures in his appeal to the State Committee nor did he complain about it in his appeal to the circuit court.  Issues not raised to or ruled upon by the administrative agency are generally not preserved for appellate review by the circuit court or this court.  Kiawah Resort Assoc. v. South Carolina Tax Commn, 318 S.C. 502, 505-06, 458 S.E.2d 542, 544 (1995).  Despite not raising the issue in his appeals, Floyd argued the issue before the circuit court.  After recognizing that the issue was not preserved, the circuit court nevertheless addressed the merits of the issue.  Similarly, we will address the merits of Floyds argument.